UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. S1-4:05CR00258 CDP (AGF) |
| LEDARIUS VENICE COOK, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the pretrial motions filed by Defendant Ledarius Venice Cook. Pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Defendant filed a motion to suppress physical evidence and a motion to suppress statements [Doc. Nos. 36 & 37], arising out of the execution of a search warrant on April 15, 2005, and a statement made by Defendant that same day following his arrest.

An evidentiary hearing was held on June 21, 2005. The government was represented by Assistant United States Attorney Allison H. Behrens. Defendant was present and represented by his attorney, John Rogers. At the hearing, the government presented the testimony of Agent Thomas Sawyer and Sergeant Anthony Lachenicht, both of whom are employed with the St. Louis Metropolitan Police Department (SLMPD) and detached as Task Force Agents (TFA) with the Drug Enforcement Administration (DEA) Most Violent Offenders Program (MVOP). The witnesses were cross-examined by defense counsel. At the end of the hearing, Defendant advised the Court that he was

attempting to obtain information necessary to support a Franks motion, and Defendant was granted additional time to file such a motion. On July 1, 2005, Defendant filed a motion for a Franks hearing, [Doc. # 44, filed under seal], and the government filed a response, after which time the matter was taken under submission.

Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witnesses, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Agent Thomas Sawyer became involved in the investigation of Defendant Ledarius Venice Cook some time prior to mid-April, 2005. Agent Sawyer, who has been employed with the SLMPD for more than 17 years, has served as a Task Force Agent with DEA, and had been detached to the MVOP since January 2004. Pursuant to the MVOP, individuals identified as violent offenders are entered as such in the REGIS system. If the individual is thereafter identified as being involved with criminal activity, the investigation is turned over to the task force.

On April 14, 2005, Agent Sawyer executed an application and affidavit for a search warrant of a single-family residence located at 108 Glen Garry (the "Residence"). Govt. Exs. 2 & 3. The affidavit recites that it is based on information developed by the affiant and by other officers of the MVOP. The affidavit states that officers had received information from a confidential informant (CI) who had proven reliable in the past and had consistently provided information that had led to the indictment and conviction of several individuals for narcotics violations, and that one such case was then pending in

this district.  Over the prior two months, the CI provided information that Defendant Cook had been distributing crack cocaine.  The CI stated that Defendant was residing at the Residence with his girlfriend, and that Defendant kept his controlled substances there.  The CI further stated that Defendant possessed a .22 or .25 caliber firearm, which he carried with him during drug transactions.

The search warrant affidavit further recited that during the prior eight weeks, officers had conducted surveillance of the Residence and had observed Defendant exit the Residence, travel to another location such as a liquor store or a gas station, and conduct what appeared to be hand-to-hand transactions.  After the transactions, Cook would return to the Residence.  The officers had observed at least four such transactions.  The details related to the transactions were not further described.

The affidavit further states that the CI informed the officers that he had been in the Residence within 72 hours preceding the search warrant application.  In Defendant's kitchen, he saw an electronic scale, Defendant's firearm, and cocaine base or crack cocaine that was broken up into "50's" and "100's."  The CI further stated that he saw Defendant take several pieces of the crack cocaine and place them in his pocket, and then pick up his firearm and leave the house.  Finally, the affidavit recites that for the four days prior to executing the affidavit, officers had conducted surveillance of the Residence, and on each occasion they observed Defendant's two vehicles parked at the Residence at night.  One of the vehicles was registered to Defendant and one had a temporary tag.  Officers had also observed Defendant enter the Residence with a key, and law enforcement data bases had tied Defendant to the Residence address.

On April 14, 2005, Agent Sawyer presented the application and affidavit to Magistrate Judge Terry I. Adelman, who indicated that he had read the documents. Judge Adelman did not ask Agent Sawyer any questions regarding the application, and Agent Sawyer did not provide any information to Judge Adelman other than the application and affidavit itself. Agent Sawyer attested to the information contained in the affidavit before Judge Adelman, and he observed Judge Adelman execute the documents. The warrant was for a search of the Residence for "controlled substances and firearms."

The search warrant was executed on the morning of April 15, 2005. The officers planned to make a soft entry into the Residence, meaning they planned to wait outside the Residence for Defendant to appear, and then use his key to make entry. Approximately 8-10 officers were present to execute the warrant, including Sgt. Lachenicht, Agent Sawyer, and Detectives Thomas Kitchell and Applegate. The officers were in plain clothes, but each wore either a police vest or raid jacket that clearly identified the officers as police. Between 7:15 and 7:30 a.m., Defendant left the Residence and began to enter a white van. The officers converged and informed Defendant that they had a search warrant. They obtained Defendant's keys and used his house key to enter the Residence. Defendant was detained outside while the Residence was secured, but was not placed in handcuffs at that time.

Inside, the officers found three juveniles. After one of the officers determined that they were getting ready for school, the children were permitted to finish getting ready and leave for school. After the Residence was cleared, Defendant was brought into the Residence and was placed on the couch in the living room, which is the first room one

enters in the Residence. The officers then proceeded to search the Residence. Agent Sawyer could not recall whether Defendant was placed in handcuffs at that time, although he did recall that Defendant was placed in handcuffs at some point during the events.

The basement of the Residence was used as a bedroom and contained items including a bed, bed frame, night stand, closet with clothing, and personal items. From their observations, the officers believed it was Defendant's bedroom. On the night stand next to the bed, Detectives Kitchell and Applegate located a black box. Inside the box was a black sock, and under the sock officers found what they believed to be narcotics. Govt. Exs. 4-6. In the top drawer of the night stand, which appeared to contain men's clothing, the officers located a firearm under some of the clothing. Govt. Exs. 8 & 9. Prior to the search, the officers had learned that Defendant had previously been convicted of a felony, and the firearm was seized both because of its proximity to the drugs and because of Defendant's status as a prior felon. In the bottom drawer of the same night stand, the officers located two digital scales. Govt. Ex. 10. All of these items were photographed and then seized. The officers also seized assorted mail from the room which associated Defendant with the Residence. See Govt. Ex. 3.

After the search, Defendant was placed under arrest. In the presence of Agent Sawyer, Detectives Kitchell advised Defendant, from memory, of his rights under Miranda. He advised Defendant that he had a right to remain silent, that anything he said would be used against him in the case, that he had a right to an attorney and to have the attorney present during questioning, and that if he could not afford an attorney one would be provided for him. When asked by Detective Kitchell if he understood these rights,

Defendant nodded, indicating that he understood. At the time, Defendant did not appear to be under the influence of drugs or narcotics, did not appear to be suffering from any mental infirmity, and appeared to understand what was happening. Court records reflect that Defendant was then 28 years old. Defendant did not make any statements at that time. Defendant was searched incident to his arrest, and officers located a check stub in Defendant's pocket, that had Defendant's name and address, which they also seized.

After the search was completed, Detective Kitchell took Defendant outside to be transported. At that time Detective Kitchell told Defendant they had found a gun and narcotics. Defendant stated that the gun was his girlfriend's, and that she had obtained it from one of her male family members. Defendant further stated that if drugs were found, they must be hers. At the time Defendant made these statements, the officers were not displaying any firearms and were not subjecting Defendant to any force. Neither were any threats or promises made to induce Defendant's statements. Detective Kitchell did not ask any follow-up questions to try to obtain the name of the individual Defendant said had provided the firearm.

## CONCLUSIONS OF LAW

A. **Probable Cause for Search Warrant**

In his memorandum in support of his motion, Defendant contends that the search warrant was not supported by probable cause because the affidavit only vaguely describes limited surveillance of Defendant; the surveillance provided insufficient evidence of probable cause; and the information provided by the CI was unreliable and incorrect. As

such, he asserts that any items seized or statements made were the product of an unlawful search.

To be valid, search warrants must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause, may be found in the place to be searched. Warden v. Hayden, 387 U.S. 294 (1967); Johnson v. United States, 333 U.S. 10 (1948); Rule 41, Federal Rules of Criminal Procedure. The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions. "In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 176 (1949). Probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Applications and affidavits should be read with common sense and not in a grudging, hyper-technical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965). Probable cause may be found in hearsay statements from reliable persons, Gates, 462 U.S. at 245; in hearsay statements from confidential informants corroborated by independent investigation, Draper v. United States, 358 U.S. 307, 313 (1959); or in observations made by trained law enforcement officers, McDonald v. United States, 335 U.S. 451, 454 (1948); United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003), cert. denied, 541 U.S. 1081 (2004).

While these are some of the ways in which probable cause is commonly established, they are by no means all-inclusive. Information contained in applications and affidavits for search warrants must be examined in light of the totality of the circumstances presented. Gates, 462 U.S. at 230. Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference if there is a substantial basis for the finding. Id. at 236.

As set forth in the affidavit, here the officers had received information from a confidential informant who had proved reliable in the past and whose information had led to the indictment and conviction of several individuals for narcotics offenses. The officers thereafter corroborated that information through their own surveillance. On at least four occasions, they observed Defendant leave the Residence, engage in what appeared to be a hand-to-hand transaction, and then return to the Residence. The CI had also been inside the Residence within the 72 hours prior to the search warrant application, and had personally observed scales, drugs, and a firearm. During the four days prior to obtaining the search warrant, the officers also conducted surveillance which confirmed that Defendant was staying at the Residence, and they further confirmed that the Residence address was associated with Defendant in law enforcement data bases.

From a review of the affidavit, the Court finds that there is ample probable cause to support the warrant. See United States v. Underwood, 364 F.3d 956, 963 (8th Cir. 2004) (information from reliable informant and corroborated by independent officer investigation sufficient for probable cause), vacated and remanded on *Booker* grounds, 125 S.Ct. 1037 (2005); United States v. Gabrio, 295 F.3d 880, 882 (8th Cir. 2002)

(probable cause found based on firsthand information of reliable informant); United States v. Pennington, 287 F.3d 739, 742-43 (8th Cir. 2002).  Even if there was some question regarding the probable cause or the degree of detail provided – and there is not – the officers relied, in good faith, on the warrant.  United States v. Leon, 468 U.S. 897, 922 (1984); United States v. Marion, 238 F.3d 965, 969 (8th Cir. 2001).

**B.  Request for Franks Hearing**

Following the evidentiary hearing, Defendant requested a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), based on allegations that the search warrant affidavit contained false statements and that the affiant included the false information knowingly or with reckless disregard for the truth.  The statements Defendant claims are untrue are listed below, and the particular facts at issue appear in italics:

> (i) "Officers received information from a confidential source.  This informant has proved reliable in the past and *has consistently provided information which has led to indicting and convicting several individuals with narcotics violations*."  Govt. Ex. 2, ¶ 2.
>
> (ii) "*Over approximately the past two months*, the confidential informant provided information concerning a person by the name of Ledarius Cook."  Govt. Ex. 2, ¶ 3.
>
> (iii) "law enforcement officers have on several occasions *over the last eight weeks* conducted surveillance of the residence located at 108 Glen Garry."  Govt. Ex. 2, ¶ 4.
>
> (iv) "During that surveillance, officers have observed Cook exit the residence, travel to another location *such as a liquor store and a gas station*, and then conduct what appeared to the officers to be hand-to-hand transactions."  Govt. Ex. 2, ¶ 4.

In his memorandum, Defendant asserts that "he has reason to believe" that the CI is a particular individual named by Defendant in the memorandum.[1] He does not provide the basis for that belief other than to state that Defendant was present when that individual was arrested on January 20, 2005, and he believed that individual became a confidential informant, working with Detectives Kitchell and Applegate, following his arrest. Based upon his assumption as to the identity of the CI, Defendant asserts that the statement (i) above must be false, because the CI could not have provided the type of information asserted during the brief period of time between January 20, 2005 and the date of the search warrant affidavit, and certainly could not have provided information that had already resulted in convictions.

Defendant bases his argument related to statements (ii), (iii), and (iv) above on alleged inconsistencies between the affidavit and the Report of Investigation ("Report") prepared by Agent Sawyer on April 18, 2005, attached as Exhibit B to Defendant's Memorandum. [Doc. # 45, Ex. B]. In ¶ 2 of the Report, Agent Sawyer states that during the week of April 4, 2005, SLMPD Detectives Kitchell and Applegate received information from a CI regarding Cook selling cocaine from the Residence. In ¶ 3, Agent Sawyer states that during "the weeks of 04-04-2005 and 04-11-2005, members of the SLMPD Violent Offender's Unit conducted periodic surveillances of 108 Glen Gary." It further states that on four occasions "surveillance observed Cook leave the residence,

---

[1] The memorandum filed by Defendant in which he named this individual was filed under seal. Inasmuch as this individual's name is not necessary to this Report and Recommendation, the individual named by Defendant as the purported CI will not be referred to by name here.

drive to the parking lot of the Glasgow Village Shopping Center," and that on all such occasions Defendant met with another vehicle and appeared to engage in a hand-to-hand transaction. Based solely on this Report, Defendant asserts that the statement in the search warrant affidavit that the surveillance was conducted over approximately eight weeks must be false. He further asserts that inasmuch as the Report alleges that Defendant was observed going to the shopping center, the reference in the affidavit to transactions at a liquor store and gas station must also be false.

In support of his request for a <u>Franks</u> hearing, Defendant also has filed reports of a proffer given by a former police officer in September, 2002 and June, 2003, in connection with a separate investigation. The former officer alleges that there was a general practice among officers of the SLMPD to embellish reports to increase the likelihood of convictions. The former officer further admitted that he had included – in a report unrelated to this case – that he had witnessed a hand-to-hand transaction that did not occur.

In response, the government states that Defendant is mistaken as to the identity of the CI. The government further asserts that the statements in the affidavit regarding the length of the investigation and the surveillance are not incorrect. The apparent discrepancy results from the fact that Detectives Kitchell and Applegate are not members of the Most Violent Offenders Program (MVOP). After they began the investigation, they requested assistance from the MVOP, approximately seven to ten days prior to the search warrant application. Thus, in his Report, Agent Sawyer, who is a member of the MVOP, was recounting surveillance conducted by the MVOP, while the greater body of

information obtained from all officers was included in the search warrant affidavit. The government further asserts that there is no inconsistency between the Report and the affidavit with regard to the liquor store reference, as Agent Sawyer has already testified that he believes there is a liquor store at the shopping center. By way of proffer, the government states that there probably is not a gas station at the shopping center, but that Agent Sawyer believes he was advised by other officers that one of the transactions occurred at a gas station. The government adds that this may have been a mis-communication.

In <u>Franks v. Delaware</u>, the Supreme Court first recognized that where a defendant makes a substantial preliminary showing that an affidavit in support of a search warrant (i) contains a false statement that was knowing and intentionally made, or made with reckless disregard for the truth, and (ii) that the false statement is necessary to establish probable cause, the Fourth Amendment requires that a hearing be held on the matter. <u>Id.</u> at 171. If, at the hearing, the defendant establishes by a preponderance of the evidence both the existence of an intentional or reckless false statement, and that with the false statement set aside, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided. <u>Id.</u> at 156.

The Supreme Court, in establishing the rule in <u>Franks</u>, recognized that it was balancing competing interests; important reasons support the "presumption of validity with respect to the affidavit supporting the search warrant." <u>Franks</u>, 438 U.S. at 167, 171. To receive a <u>Franks</u> hearing, the defendant must make a "substantial preliminary showing," by a preponderance of the evidence, and the false statements must involve

"deliberate falsehood or . . . reckless disregard for the truth." Id. at 171. See also United States v. Clapp, 46 F.3d 795, 798 (8th Cir. 1995); United States v. Keeper, 977 F.2d 1238, 1242 (8th Cir. 1992). "Allegations of negligence or innocent mistake are insufficient." Franks, 438 U.S. at 171. See also Clapp, 46 F.3d at 798. If, after disregarding the false information or adding the omitted information, the affidavit would support a finding of probable cause, no hearing is required. Id. As such, the courts have recognized that the "'substantial preliminary showing' requirement needed to obtain a Franks hearing is not lightly met." United States v. Hiveley, 61 F.3d 1358, 1360 (8th Cir. 1995) (citing United States v. Wajda, 810 F.2d 754, 759 (8th Cir.), cert. denied, 481 U.S. 1040 (1987)). See also Gabrio, 295 F.3d at 883.

On this record, Defendant has failed to make the necessary showing for a Franks hearing. With regard to the first statement, related to the CI providing information that has led to convictions, Defendant has not offered any credible support for the assertion that the information is false. In describing the type of showing necessary, the courts have directed that "supporting reasons" for the assertions of falsity be provided and that "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." United States v. Lucca, 377 F.3d 927, 931 (8th Cir. 2004) (quoting Franks, 438 U.S. at 171). Defendant's unsupported supposition as to the identity of the CI simply does not suffice in the face of the government's denial. United States v. Anderson, 243 F.3d 478, 483 (8th Cir.) (a mere allegation without an offer of proof in the form of an affidavit or other reliable corroboration will not suffice to make the preliminary showing for a Franks hearing), cert. denied, 534 U.S. 903 (2001).

Were it otherwise, all defendants would be entitled to Franks hearings based on nothing more than their guesses as to the identity of a CI used in support of a search warrant. Moreover, even if the assertion that the CI has provided information that has led to convictions was omitted from the affidavit, the remaining information,[2] including officers' surveillance of Defendant, would suffice to provide probable cause.

For the same reason, Defendant's allegation with respect to the length of time the CI provided information fails. The Report filed by Agent Sawyer states that Detectives. Kitchell and Applegate received information from a CI during the week of April 4, 2005. This comports with the time period when the MVOP got involved. There is nothing in the Report to suggest that Detectives Kitchell and Applegate did not receive information prior to that date as well. Indeed, Detective Kitchell testified at the Preliminary Examination and Detention Hearing in this matter on April 18, 2005 – just days after the search warrant was executed – and a transcript of his testimony is attached as Exhibit F to Defendant's Memorandum. At that hearing, Detective Kitchell testified, consistent with the search warrant affidavit, that he had received information from the CI "over the past several months," and that he and others thereafter conducted surveillance "over the next several months." Tr. 3-4. The reference in the Report to information received at a particular date during this time period does not suffice to suggest, much less demonstrate, the falsity of the statement contained in the search warrant affidavit.

---

[2] Notably, Defendant does not allege the CI had not provided reliable information in the past, nor does he assert that the observations made of Defendant at the Residence were untrue.

Nor has Defendant made the requisite showing with respect to the particular location of the hand-to-hand transactions. The courts have repeatedly cautioned that search warrants must be reviewed with common sense and not in a grudging or hyper-technical fashion. See, e.g., United States v. Ryan, 293 F.3d 1059, 1061 (8th Cir. 2002). Here the affidavit states that officers observed Defendant travel to another location "such as a liquor store and a gas station." At the hearing, Agent Sawyer testified that he believed there was a liquor store at the shopping center referenced in his Report and that he had personally observed one hand-to-hand transaction at that site. As such, this portion of the statement in both Report and affidavit is consistent, and Defendant has produced no evidence to suggest otherwise. Detective Kitchell also testified at the preliminary hearing that on numerous occasions during his own surveillance of Defendant, he observed Defendant leave the Residence, drive a short distance, engage in a hand-to-hand transaction, and return to the Residence. Tr. 4-5.

At best, the reference to one transaction occurring at a gas station may be incorrect. But this, still, is not enough. In Franks, the Supreme Court recognized that the requirement that information contained in an affidavit be "truthful" does not mean "that every fact recited in the warrant affidavit is necessarily correct," but rather means "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." Franks, 438 U.S. at 165. See Underwood, 364 F.3d at 964 (minor inconsistencies or discrepancies in the search warrant affidavit do not show deliberate or reckless falsehood); United States v. Coleman, 349 F.3d 1077, 1084 (8th Cir. 2003)

(same), cert. denied, 541 U.S. 1080 (2004). See also United States v. Schmitz, 181 F.3d 981, 986 (8th Cir. 1999).

Defendant has provided no evidence to suggest Agent Sawyer was not so advised or that he did not believe that to be one of the locations of the transactions. As described in Schmitz, the Eighth Circuit has set a stringent test for defining recklessness in the context of a Franks hearing, which requires a showing that the affiant must have entertained serious doubts or had obvious reasons to doubt the truth of his statements.

> [I]n the context of a Franks v. Delaware inquiry, we have declined to adopt a definition of "reckless disregard" that incorporates the "subjective" versus "objective" terminology and have instead explained that
>
>> The test for determining whether an affiant's statements were made with reckless disregard for the truth is not simply whether the affiant acknowledged that what he [or she] reported was true, but whether, viewing all of the evidence, the affiant must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported.
>
> United States v. Clapp, 46 F.3d 795, 801 n. 6 (8th Cir. 1995), quoted in United States v. Johnson, 78 F.3d 1258, 1262 (8th Cir. 1996).

Schmitz, 181 F.3d at 986-87 (modifications in original).

The decision in Clapp illustrates the type of evidence required. In Clapp, an agent, Tweedy, stated in his affidavit in support of a search warrant that he had "participated in an interview" of a particular witness, Smith. He further stated that Smith "didn't know where the remaining $329,600.95 went." In truth, Tweedy had not interviewed the witness, but rather had overheard agent DiPrima's interview of Smith from his desk 15-20 feet away, while he was working on an unrelated matter. The statement about Smith's

knowledge regarding the remaining funds was clearly inaccurate, as Smith had in fact advised DiPrima regarding the disposition of the funds.  Indeed, DiPrima had included this information in the report of his interview, but that interview report was not reviewed by Tweedy.  Clapp, 46 F.3d at 799, 801. The court found this conduct, while negligent, did not rise to the level of recklessness required under Franks.

> Had Tweedy admitted to having read DiPrima's report yet nevertheless included in the affidavit that Smith did not know where the remaining money went, there might well be grounds for concluding that Tweedy acted in reckless disregard for the truth.  Tweedy, however, testified only that he thought the statement was made sometime during DiPrima's interview with Smith.

Id. at 801.

On this record, there is nothing to suggest that Agent Sawyer must have entertained serious doubts about the accuracy of the statement made or had obvious reasons to doubt the accuracy of the information stated.  And again, even if the Court were to disregard the statement in the affidavit that one of the transactions occurred at a gas station, there is still more than ample probable cause to support the search warrant. See Lucca, 377 F.3d at 932 (where affiant's statements are at least partially corroborated, attacks on the credibility of the affiant are not crucial to the finding of probable cause).

Finally, the summaries of proffers by the former police officer submitted by Defendant do not assist Defendant in meeting his burden.  These proffers were given in connection with a wholly separate investigation conducted several years before these events.  He makes no allegations regarding either the officers involved in this case or the MVOP, and there is nothing to suggest the former officer had any knowledge of the

officers or the events in this case. Indeed the individual ceased being a police officer in June, 2002, almost three years before the events at issue here. As such, Defendant's motion for a Franks hearing is denied.

**C. Seizure of Evidence**

Although Defendant has not challenged the execution of the warrant, all of the items were properly seized. The drugs and firearm were specifically covered by the warrant and were located in a place the officers were authorized to search. "A lawful search extends to all areas and containers in which the object of a search may be found." United States v. Weinbender, 109 F.3d 1327, 1329 (8th Cir. 1997). While the scales were not listed in the warrant, they were seized in plan view, and the officers had reasonable cause to believe they constituted contraband or evidence of the Defendant's criminal drug activity. Id. at 1330; United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995), cert. denied, 516 U.S. 1150 (1996). Defendant has not specifically challenged the seizure of the mail from the Residence, but this, too, was located in plain view, and the officers were likewise justified in seizing the mail as evidence.

**D. Arrest of Defendant**

Officers have probable cause to effect a warrantless arrest at the moment when they have knowledge of facts and circumstances, grounded in reasonably trustworthy information, that would warrant a belief by a reasonably prudent person that the subject has been or is committing an offense. United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003). Based on the totality of the information known to the officers at the time, including the information contained in the search warrant affidavit and the evidence

found at the Residence, the officers had probable cause to arrest Defendant without a warrant. See United States v. Velazquez-Rivera, 366 F.3d 661, 664-65 (8th Cir. 2004); United States v. Powell, 39 F.3d 894, 895-96 (8th Cir. 1994); United States v. Sherrill, 27 F.3d 344, 347 (8th Cir. 1994).

### E. Search Incident to Arrest

Following Defendant's lawful arrest, the officers were authorized to search Defendant incident to his arrest. New York v. Belton, 453 U.S. 454, 457 (1981); United States v. Williams, 165 F.3d 1193, 1195 (8th Cir. 1999). They were therefore authorized to seize as evidence the check stub that associated Defendant with the address of the Residence.

### F. Statement Made by Defendant

As grounds for the motion to suppress his statements, Defendant asserts that the arrest was the result of an unlawful search, and that Defendant was not advised of his rights under Miranda. Defendant's first ground fails for the reasons set forth above. Defendant's second ground fails because the Court finds, as a factual matter, that Defendant was advised of his Miranda rights prior to making any statements. On this record, the Court further finds that Defendant knowingly waived his rights, and that the statements made by him were voluntarily made and were not the result of any threats, promises, or coercion. Moreover, the statements by Defendant were not the result of any interrogation. United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (officer's comment that he had tried to arrest defendant the day before, to which the defendant responded, was not the functional equivalent of interrogation because it was not likely to

elicit incriminating evidence, but rather was a factual statement not accompanied by threats or pressure); United States v. Lockett, 393 F.3d 834, 838 (8th Cir. 2005) (advising the defendant they were looking for him when he asked why the officers were there and explaining what defendant was suspected of are not the functional equivalent of interrogation).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for a Franks Hearing [Doc. # 44] is **denied**.

**IT IS HEREBY RECOMMENDED** that Defendant's Motions to Suppress Evidence and Statements [Doc. Nos. 36 & 37] be **denied**.

Trial in this matter has been set for **Monday, August 29, 2005, at 9:00 a.m.**, before the **Honorable Catherine D. Perry**.

The parties are advised that they have ten (10) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir.1990).

_____
AUDREY G. FLEISSIG
United States Magistrate Judge

Dated this 29th day of July, 2005.